UNITED STATES of America
v.
Daniel E. LANGSTON.
Cr. Nos. 15875, 15876.

United States District Court
W. D. Pennsylvania.
April 16, 1962.

J. Robert Maxwell, Pittsburgh, Pa., for defendant Langston.

Wendell Stanton, Asst. U. S. Atty., Pittsburgh, Pa., for United States.

MARSH, District Judge.

On August 26, 1959, defendant, Daniel E. Langston, waived indictment and trial by jury, and entered pleas of guilty to two informations charging him with violations of § 2315, Title 18 U.S.C. He was sentenced to indeterminate terms of imprisonment totaling 15 years. Section 4208, Title 18 U.S.C.

This is defendant's second petition to have his sentence vacated and set aside pursuant to § 2255, 28 U.S.C. See: D.C., 194 F.Supp. 891 (1961). Counsel was appointed to represent him.

In this petition defendant avers that he is illegally confined in the United States Penitentiary at Atlanta, Georgia, because he was psychotic and schizophrenic before, during, and after the sentencing proceedings; that he did not comprehend the nature and consequences of his acts; that he did not intelligently waive his constitutional rights to indictment and trial by jury; "that his mental and moral faculties are so perverted and deranged that he is incapable of distinguishing between right and wrong and that his will and governing power of his mind is so completely destroyed and deranged that his actions are beyond his control"; and that "his mind is so perverted that he can not adhere to right and refrain from doing wrong, in truth, he is criminally insane".

Defendant alleges he entered into a contract with the Government for permanent medical care when he voluntarily participated in an "infectious hepatitis" experiment conducted by the National Institute of Health of the Public Health Service while confined in the United States Penitentiary at Lewisburg, Pennsylvania, in 1952. Because of this alleged contract, he strenuously contends that he should have been given medical and psychiatric care in a Government hospital or medical center from that time until cured of his insanity.[1] Instead, according to the averment of the defendant, he was *illegally* released by federal authorities in 1954 from Lewisburg Penitentiary and again in 1958 from Leavenworth Penitentiary, and because of his insanity and physical ailments, he is exempt from prosecution and confinement in any penal institution.[2]

A hearing on the petition to vacate was held. From the evidence, it is my opinion that the petition should be denied.

■ I find as a fact that defendant did participate voluntarily in the hepatitis experiment at Lewisburg Penitentiary in 1952, but there was no contract with any agency or department of the Government for permanent medical care as alleged.[3]

At the arraignment and sentencing proceedings, defendant talked extensively, rationally, intelligently and alertly. I did not notice anything from his attitude, demeanor, or conversation that indicated he was insane, mentally incompetent, or unable to assist in his defense.[4]

1. What the defendant and his counsel seem to want more than anything else is for the court to commit defendant to a mental hospital for psychiatric treatment, believing that his alleged mental illness can there be cured and his release from confinement be assured. Although they forcefully remind the court of the shortcomings of the penal system (defendant's Ex. X), and as much as we would like to help defendant as a recidivist whose background is most deplorable, we do not think a court can legally acquiesce in this request. Whether a federal prisoner is a suitable subject for hospitalization at a United States Medical Center is a question for the Attorney General and the prison authorities. Rosheisen v. Steele, 193 F.2d 273 (8th Cir. 1951); Garcia v. Steele, 193 F.2d 276 (8th Cir. 1951).

2. Defendant has tried, without success, to enforce the alleged contract against the United States Attorney General, the United States Public Health Service, the United States Armed Forces, and the United States Department of Justice.

See: Langston v. United States Attorney General et al., 293 F.2d 316 (3d Cir. 1961); Langston v. Heritage, 365 U.S. 873, 81 S.Ct. 908, 5 L.Ed.2d 862 (1961) (Misc. No. 796); Langston v. Letts, 366 U.S. 931, 81 S.Ct. 1652, 6 L.Ed.2d 390 (1961) (Misc. No. 830).

3. For clarification purposes, I requested the United States Attorney to endeavor to discover whether any contract, as alleged, was in existence. The communications are included in the record (Order of January 19, 1962). All that appears from them is that defendant received a certificate of merit, some small remuneration, and executed a release to the Public Health Service. No contract for permanent medical care is even suggested.

4. Defendant relies heavily on the 1956 psychiatric report from Leavenworth (partially quoted infra) which was contained in the Presentence Report and recounted his extensive criminal record up to that time. This record proved to me that Langston could not get along by himself, i. e., in society—not that he was

His two lawyers who had been appointed on June 30, 1959, by an associate judge, had consulted with him on approximately 25 different occasions and did not detect any mental deficiencies; that they were alert to the defense of insanity is established by their testimony and the record.[5] They found defendant truthful, reliable, cooperative, of good recollection and helpful in the preparation of his defense.

Mr. Chad A. John of the F.B.I., who as one of the investigating officers had several interviews with defendant, did not notice anything that would indicate that he was mentally incompetent or unable to assist in his defense.

The United States Attorney and his assistants, who have always been alert to invoke the provisions of § 4244, Title 18 U.S.C., found no reason to suspect defendant of insanity or mental incompetency.

There is nothing in the penitentiary records at Lewisburg, or Atlanta, where defendant has spent considerable time during the past decade, to indicate that he ever alleged that he was insane or of unsound mind or defective until he filed the current petition. In 1956, Chief Judge Allen B. Hannay of the Southern District of Texas sentenced defendant and recommended a psychiatric examination. That examination was conducted at the United States Penitentiary at Leavenworth. The psychiatric report, dated August 8, 1956, concludes "that we are dealing with a grown up rejected child whose acting out behavior has taken the form of alcoholism and criminalism. There is a strong element of chronic depression, feeling of inferiority, and worthlessness. One gets considerable

hint also of schizo-adaptive mechanisms." The writer thought that some of Langston's "overt maladjustment may be due to indulgence in alcohol", and felt that there was a fair prospect of satisfactory adjustment in the penitentiary. At any rate, defendant was not sent to a Medical Center but remained at Leavenworth Penitentiary. Shortly before his release a progress report by the psychologist dated February 12, 1958, stated: "Apparently he has no medical or psychiatric problems at the present time and we feel his adjustment has been adequate." When he later arrived at Atlanta Penitentiary in 1959, the Classification Study made there (October 8, 1959) concludes that he "is a prison-wise subject whose behavior pattern reflects that he will do anything in order to obtain that which he desires." From 1952 to 1962, the prison authorities at Lewisburg, Leavenworth and Atlanta penitentiaries, after extensive and repeated examinations, did not find any reason to have defendant examined pursuant to § 4241, Title 18 U.S. C.

In his first petition to vacate sentence filed on May 25, 1960, defendant failed to mention his alleged long-standing, severe mental derangement. In my opinion, his current averments of mental disease are afterthoughts, stimulated perhaps by the decisions which defendant recited in his petition.[6]

I find as a fact that defendant never requested his appointed counsel to enter on his behalf pleas of not guilty because of insanity. I further find: That after his arrest for the offenses for which he was sentenced up to the time of the sentencing hearing, defendant never requested jail authorities, the United

---

psychotic and unable to assist in his defense at the time of sentencing. (See: Copy of Presentence Report and Transcript of sentencing proceedings of August 26, 1959, p. 33.)

5. The appointed counsel also represented a co-defendant, John David McClellan, and when they found McClellan's conduct to be inexplicable, procured the services of a psychiatrist. (Transcript of sentencing

proceedings at p. 40, and see testimony of Attorney Gross and Attorney King.) Counsel felt no need to request a psychiatric examination for Langston.

6. Inter alia, Gregori v. United States, 243 F.2d 48 (5th Cir. 1957); United States v. Currens, 290 F.2d 751 (3d Cir. 1961); Durham v. United States, 94 U.S.App. D.C. 228, 214 F.2d 862, 45 A.L.R.2d 1430 (1954).

States Attorney, or his counsel, to investigate his sanity; that there was nothing in defendant's demeanor, attitude or actions on August 26, 1959, or during his confinement in Pittsburgh while awaiting sentence, to cause the United States Attorney, his counsel, the F.B.I. agents concerned, or me, as the sentencing judge, to suspect that he was insane or mentally incompetent or defective; that he has never been confined to a mental hospital nor has he ever been adjudged insane; that the available medical records fail to sustain the allegations of insanity or mental incompetency contained in the petition.[7]

■ From the records and evidence,[8] I find that on August 26, 1959, defendant was a psychopathic personality [9] with anti-social tendencies in the sense that he was suffering from character defects which are demonstrated by recurrent criminal behavior, but not from a mental illness. I find that defendant was not psychotic; that he knew the difference between right and wrong; that his mind was functioning normally; that he understood his constitutional rights and the nature of the proceedings against him; that he was mentally competent and entirely capable of assisting his counsel in his defense and that he did so.

It is difficult indeed to peruse the manifold pleadings and communications, for the most part composed by defendant, and hear him talk and testify at length, and not find that he is an intelligent and clever person with considerable ability to express himself orally and to analyze and effectively present written legal arguments.[10]

Since the averments of the petition to vacate have not been sustained, the petition should be denied. An appropriate order to this effect will be entered.

I wish to express sincere appreciation for the painstaking, time-consuming, and thorough representation afforded this indigent defendant, at my request, by J. Robert Maxwell, Esq.

---

7. Defendant avers that the medical records which would sustain his allegations of insanity have been lost, i. e., the medical records from Kilby Prison, Alabama; medical records in the files of the Supreme Court of the United States; psychiatric report from Lewisburg Penitentiary; medical records in Atlanta Penitentiary; and perhaps others. We cannot give the averment any credence.

8. The court appointed Dr. M. H. Bowers, a psychiatrist, and Joseph F. Smudski, M.S., a psychologist, to examine defendant and furnish written reports; this was done and the reports are part of the record. Dr. Bowers also testified. Dr. Laurence L. Bryan, the psychologist from Atlanta Penitentiary, brought the defendant's medical records to Pittsburgh and also testified. For some reason defendant's medical record were not made available to Dr. Bowers. These records (Govt. Ex. 8), particularly the Neuro-psychiatric Questionnaire which defendant answered on September 10, 1959, at Atlanta, show conclusively that a part of the history defendant told to Dr. Bowers is incredible, viz.: "Feels that from 1953 till at Atlanta he had no feelings, could not talk, turn, did not know where he was. Things did not register with him. Felt no one understood him. States he did not know right from wrong—did not know truth. * * * Withdrew unto self—often blacked out."

9. It seems that legal authorities as well as psychiatric authorities are not in agreement on whether a person suffering from a psychopathic or sociopathic personality disturbance is afflicted with a mental illness or merely a character defect. See: United States v. Currens, 290 F.2d 751, 761 (3d Cir. 1961); Tremblay v. Overholser, 199 F.Supp. 569 (D.C.D.C.1961).

10. Langston's I.Q. at Leavenworth was 117, at Atlanta 135.